CLAIRE ASSOCIATES, Plaintiffs-Appellants, v. GEORGE C. PONTIKES *et al.*, Defendants-Appellees.

First District (2nd Division) No. 85—2545

Opinion filed December 30, 1986.

Johnson, Cusack & Bell, Ltd., of Chicago (John W. Bell, Robert L. Nora, and Thomas H. Fegan, of counsel), for appellants.

Sidley & Austin, of Chicago (Robert A. Downing and David F. Graham, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

The instant case is a legal malpractice action, brought by John Livaditis on behalf of Claire Associates, a limited partnership for which he was the general partner (hereinafter referred to collectively

as appellants), against a number of attorneys (George Pontikes, Stanton Schuman, and Robert Drake, all of the firm of Foss, Schuman & Drake, hereinafter referred to as appellees), who had represented the partnership in certain legal matters prior to the initiation of this litigation. In particular, appellees had represented appellants in a breach of contract action filed in Federal court, in which suit the defendant was Northwestern Mutual Life Insurance Company (hereinafter Northwestern). In the contract action, it was alleged that Northwestern had agreed to provide financing for the construction of a shopping center complex and then wrongfully defaulted on that obligation. The district court ultimately dismissed the contract action with prejudice.

In the malpractice action, appellants asserted that it was the negligent representation provided by appellees which resulted in the dismissal. The circuit court dismissed the malpractice complaint under the authority of section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985. ch. 110, par. 2—615), finding that the malpractice complaint lacked the factual specificity required to state a cause of action. Because we conclude that the underlying Federal contract claim, as pleaded by appellants, would not entitle appellants to any recovery, we are constrained to uphold the circuit court's determination that the complaint did not state an actionable claim of malpractice.

BACKGROUND

Essential to an understanding of the case, and of our resolution of the issues raised on appeal, is an identification of the various parties of the contract claim and to the malpractice suit, the composition of those parties, and their activities. We therefore detail them herein.

Claire Associates was a limited partnership, comprised of John Livaditis and J.G.O. Corporation as general partners, and Sheldon Lavin, James G. O'Donnell, Kathleen Sawyer, Marshall Rasof, Bernard Harlan, and Jerome Brault as class A limited partners (although the partnership agreement provided for a set of class B partners, no such interests were ever sold). The partnership agreement was executed in January 1975 and was twice amended by its members.

On June 24, 1975, a second partnership, also operating under the name Claire Associates, was organized. The sole general partner of this second partnership was Livaditis, and initially, the only limited partner was David Husman. Husman was later replaced as limited partner by Mundelein Associates (also a limited partnership). Mundelein was in turn composed of Donald Benjamin, Joseph Kahn, Richard Eichman, Gerald Sobel, Alex Pruzen, Lawrence Aronson, Carl Gershenfeld, Irving Drucker, Raymond Portugal, David Husman,

Kathleen Husman, Irving Husman, Jim Martin, Joseph Aarons, and Rosman Adjustment Service. For the sake of simplicity, we shall refer to the first partnership described in the preceding paragraph as Claire I and the second partnership as Claire II.

In an application dated July 18, 1975, and signed by Livaditis, "Claire Associates, an Illinois Limited Partnership" applied to Northwestern for mortgage financing in the amount of $4,650,000, a sum required to build a shopping center in Mundelein. The application listed Livaditis and J.G.O. Corporation as general partners in Claire Associates, the proposed borrowing entity. Clearly, based on the application, it was Claire I which sought financing from Northwestern.

On August 1, 1975, Northwestern conditionally approved the application and issued a loan commitment to Claire Associates as the borrower. Notable among the conditions imposed by Northwestern was the following clause:

> "this commitment is subject to the accuracy as of the date hereof of all information, data, representations, exhibits, and other materials submitted in connection with the application. This commitment is issued on the condition that, at the time of completing the loan, there will have been since the date of this commitment, no substantial changes in the assets, liabilities or condition, financial or otherwise, of the Borrower or any guarantor except changes arising from transactions in the ordinary course of business, none of which changes has been materially adverse."

As noted, the application specifically indicated that both Livaditis and J.G.O. Corporation were general partners in the partnership. Although the parties have not cited it, we note the "call clause" of the loan commitment, which provided:

> "The loan may be declared due and payable if the Property or any part thereof securing the loan is sold or if any change in the existing proportionate ownership is permitted without the written consent of Lender.
>
> For the purpose of this provision, 'Existing Proportionate Ownership' is defined as the relationship between or among the present general partners."[1]

That Claire I was the borrowing entity is manifest from these provisions, which note more than one general partner, label any change in

---

[1] While the call clause was not activated herein since the loan was never made, this clause clearly indicates that Northwestern was justifiably of the belief that there were multiple general partners.

their ownership relationship as a significant event, and which specifically incorporate by reference the representations made in the application.

Sometime after Northwestern issued the commitment, a proposal was allegedly made to alter the composition of the borrowing entity by substituting Claire II for Claire I. In a letter dated December 30, 1975, Northwestern rejected that proposal, stating:

"in support of your application for the subject loan *** you represented that the borrowing entity would be a limited partnership composed of various individuals and corporations. You have recently supplied us with a copy of an executed limited partnership agreement *** purporting to constitute the borrowing entity. The partnership proposed is a substantial variance from the entity proposed at the time we issued the loan commitment. The presently proposed borrowing entity is not satisfactory to [Northwestern]."

This fact, along with others, was the basis of Northwestern's ultimate refusal to provide the mortgage funding. Appellants were forced by that refusal to obtain alternate financing in order to complete the shopping center venture.

Thereafter, appellant elected to proceed with a breach of contract suit against Northwestern arising from its refusal to keep its loan commitment. That suit was filed in Federal district court, with appellees appearing as appellants' counsel of record. The initial complaint was filed in 1976, and was styled "Claire Associates, an Illinois Limited Partnership; John Livaditis, individually and as general partner in Claire Associates; and J.G.D. Corporation, individually and as general partner in Claire Associates v. Northwestern Mutual Life Insurance Company." On March 18, 1977, the complaint was dismissed on Northwestern's motion because the complaint erroneously named J.G.D. Corporation, rather than J.G.O. Corporation, as one of the parties-plaintiff. As part of its dismissal order, the court granted plaintiffs leave to file an amended complaint. Such a complaint was filed on June 10, 1977. This time, the complaint was styled "Claire Associates, an Illinois Limited Partnership; John Livaditis, individually and as general partner in Claire Associates; and Mundelein Associates, a limited partner in Claire Associates v. Northwestern Mutual Life Insurance Company." On September 30, 1977, Northwestern again filed a motion to dismiss, this time asserting, *inter alia*, that the amended complaint was brought by Claire II, which could not press a claim for a breach of the loan commitment, as that commitment ran only to Claire I.

Although they were still representing appellants in the breach of contract action, appellees did not file a reply on appellants' behalf responding to the motion to dismiss. Appellees also failed to appear on their clients' behalf at the hearing on that motion, held on November 11, 1977. The district court ultimately elected to grant Northwestern's request for dismissal, stating in a written order entered November 14, 1977, that "[p]laintiff having failed to respond to defendant's motion to dismiss the second amended complaint, this cause is hereby dismissed with prejudice."

On September 21, 1978, appellees sent a letter to appellants, apparently in response to an inquiry by appellants regarding the status of the case. That letter, sent out over Mr. Pontikes' signature, stated that "according to my latest information the judge will resolve the [breach of contract claim against Northwestern] in late October or early November. There is no rush, because it is very likely that the wrong partnership has sued and we are going to have to determine whether a new lawsuit naming the correct partnership and the original limited partners can be filed." This letter, advising appellants that the case was still pending before the district court, was sent well over 10 months after the case had actually been dismissed.

Appellants thereafter retained other counsel and initiated this legal malpractice claim against appellees, asserting that appellees' failure to answer the dismissal motion or appear on its behalf at the hearing resulted in the dismissal of their contract action against Northwestern. Specifically, appellants alleged that there were the following deficiencies in appellees' performance: (a) appellees failed to file a response to the dismissal motion; (b) they failed to appear at the dismissal hearing; (c) they failed to present any oral or written opposition to the dismissal motion; (d) they failed to move to vacate the dismissal; (e) they failed to move for reconsideration of the dismissal; (f) they failed to file a Rule 60(b) motion to alter or modify the dismissal order; (g) they failed to file a notice of appeal from the dismissal order; (h) they failed to seek leave to file a third amended complaint; and (i) they failed to properly inform appellants of the status of the case.

Appellees filed motions to dismiss the malpractice complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619). A hearing was held on those requests, and the circuit court granted appellees' section 2—615 motion, finding that the complaint lacked the factual specificity required to assert a valid cause of action for legal malpractice. A motion to vacate that decision was subsequently denied, and this appeal followed.

OPINION

■ The elements of a legal malpractice action are no different from those which comprise any other tort action; they differ in specifics rather than in kind. As the parties recognize, in the most basic sense, a plaintiff pleading a legal malpractice action must allege the following: (a) the existence of an attorney/client relationship; (b) a duty arising from that relationship; (c) a breach of that duty on the part of defendant/counsel; (d) proximate cause; and (e) damages. (*Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 465, 475 N.E.2d 1035.) In the case *sub judice*, there is no dispute as to the existence of the first three elements; that is, the fact that the parties had such a relationship, that appellees owed appellants a duty arising from that relationship, and that they breached that duty are not at issue. Appellees have candidly acknowledged their negligence, as they must in this context. The matter arises on defendants' section 2—615 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), which admits all facts well pleaded, including the first three elements. Appellees response is in the nature of the common law "confession and avoidance." The focus of the dispute herein is on the remaining elements of causation and damages. This case therefore turns on the factual allegations regarding the loss of the breach of contract claim, for that was the damage allegedly accruing from appellees' negligence. For appellants to have alleged a well-grounded cause of action for malpractice, it was necessary that they plead the existence of a valid claim for breach of contract against Northwestern. Put simply and briefly, if there was no way for appellants to recover against Northwestern, then no amount of negligence on the part of appellees could result in a finding of causation or damages.

■ Legal-malpractice complaints are by their nature lawsuits dependent upon predicate lawsuits. In the terms chosen by the litigants herein, a legal-malpractice claim is a "case within a case." This is because of the damages element of the action; no malpractice exists unless counsel's negligence has resulted in the loss of an underlying cause of action or the loss of a meritorious defense if the attorney was defending in the underlying suit. (See *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 465, 475 N.E.2d 1035 ("damage is an element of a professional malpractice claim that is not presumed [and plaintiff] bears the burden of pleading and proving that damages resulted. This obligation entails establishing that 'but for' the attorney's negligence, the client would have successfully defended or prosecuted the underlying suit").) Accordingly, we must concentrate our attention, as did the circuit court herein, on the predicate claim against

Northwestern.

■■■ A motion to dismiss a complaint for failure to state a cause of action attacks the legal sufficiency, as opposed to the factual sufficiency, of a complaint. (*Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.) The facts pleaded in the complaint are significant only insofar as they are necessary to state the elements of a claim upon which relief may be granted. A plaintiff is not required to prove his case in the pleading stage; rather, he must merely allege sufficient facts to state all the elements which are necessary to constitute his cause of action so as to inform the defendant of the claim against which he must defend. (*Shugan v. Colonial View Manor* (1982), 107 Ill. App. 3d 458, 437 N.E.2d 731.) A motion to dismiss for failure to state a cause of action admits all facts well pleaded, together with all reasonable inferences arising therefrom. (*Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 850, *aff'd* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.) In ruling on a motion to dismiss, pleadings are to be liberally construed. (Ill. Rev. Stat. 1985, ch. 110, par. 2—603; *Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818, 401 N.E. 2d 1094.) However,

> "[n]otice pleading, as known in some jurisdictions, is not sufficient under our practice act. * * *
>
> 'This court has repeatedly held that a complaint which does not allege facts, the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and that such deficiency may not be cured by liberal construction or argument.' "
>
> *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 427, 430 N.E.2d 976, quoting from *People ex. rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill.2d 150, 152, 251 N.E.2d 211.

It is only where no state of facts proved under the pleading would entitle plaintiff to recovery that a motion to dismiss should be granted under section 2—615. (*Krautstrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 420 N.E.2d 429.) In sum, it is not enough merely to inform the defendant of the nature of the claim; the pleading must also provide a factual premise underlying the claim.

In the context of the case at bar, this required that appellants plead a valid underlying claim, lost because of appellees' negligence. (See *House v. Maddox* (1977), 46 Ill. App. 3d 68, 360 N.E.2d 580; *Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 304 N.E.2d 677.) Absent such a valid cause of action, no set of facts would entitle appellants to any recovery.

■■ Appellants based their claim against Northwestern upon con-

tract principles and asserted that a contract was realized upon the issuance of the loan commitment by Northwestern and acceptance thereof by appellants. Construction of the terms of a contract presents a question of law for the court. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 171, 474 N.E.2d 376.) Here, the loan commitment ran between Northwestern and the borrower. That loan commitment explicitly incorporated the application and conditioned the commitment on the accuracy of the representations contained therein. That application, in turn, explicitly described the borrower as Claire Associates, a limited partnership with *two* general partners, Livaditis and J.G.O. Corporation. Additionally, the loan commitment required that no materially adverse changes in the borrowing entity occur and characterized (in the call clause) any alteration in the relationship between the general partners a significant event.

 From the foregoing, it is abundantly clear that Northwestern's loan commitment ran only to Claire I and then only on condition that the financial vitality of that borrowing entity remain unchanged. At the time Northwestern issued the loan commitment, there were two general partners who could be held jointly and severally liable in the event of any deficiency on default. (See *Allen v. Amber Manor Apartments Partnership* (1981), 95 Ill. App. 3d 541, 547, 420 N.E.2d 440.) When appellants demanded the mortgage funding, only one general partner with such liability existed, namely, Livad[i]tis. Under such circumstances, Northwestern was entitled to refuse the loan because of that material change in the borrowing entity. Inasmuch as Northwestern was so privileged, and since this matter was alleged in Northwestern's motion to dismiss the breach of contract action, appellants would have been unable to recover from Northwestern in any event. This being so, no damages were recoverable from appellees due to their abject failure to respond to the motion to dismiss, their failure to appear at the hearing thereon, or from appellees' letter to appellants on the status of the case, which was manifestly erroneous.

 In their malpractice complaint, appellants have not alleged any facts which would overcome the deficiency in the contract action delineated above. Rather, their complaint asserts a laundry list of actions an attorney might take when faced with a motion to dismiss (*i.e.*, file a response, appear in opposition to it, etc.) or actions an attorney might take when the complaint is dismissed (such as request to vacate the dismissal, for reconsideration or modification of the dismissal, appealing the dismissal, or pleading over the dismissed complaint). The complaint is utterly silent as to what facts would support

any of these actions. Appellants' sole assertion regarding the underlying suit is that it was "valuable and meritorious."

If in fact appellants had a valuable claim against Northwestern, it was incumbent upon appellants to plead the nature of that claim with sufficient factual specificity to apprise appellees of the claim. Here, however, appellants did not append the contract to their amended complaint, nor did they allege any facts in the pleading which would establish a valuable breach of contract claim. Rather, they merely re-asserted in the circuit court the facially deficient Federal breach of contract claim. Appellants' sole written response to this deficiency is that they need not prove the validity of the underlying claim in the pleading stage. While we do not dispute this truism, it does not repeal the requirement that the pleading state a valid cause of action in the first instance.

In oral argument, appellants urged that Northwestern "ratified" the substitution of Claire II for Claire I. Their malpractice complaint, however, does not allege that ratification, nor does the record reflect any such action by Northwestern. Indeed, the record directly contradicts such an assertion, since the substitution was the basis of Northwestern's refusal to provide the requested funds. That being the case, despite the fact that appellees, as we have previously indicated, acknowledge their negligence (as they must in this context, since the allegations of the complaint must be assumed as true), no actionable malpractice was alleged in the complaint. The complaint was factually deficient, as found by the circuit court.

In reaching this determination, we are cognizant of the great anomaly of our decision. It is because appellees failed to draft an adequate pleading in Federal court on the breach of contract claim that no malpractice may be found. It can safely be said that it was the admitted inadequacy of appellees' representation which prevents a finding of malpractice. However, appellants elected to allege malpractice only as to appellees' activities after Northwestern sought dismissal. They erroneously premise their contentions on the adequacy of the Federal complaint. Since that complaint was deficient, and since no malpractice in the drafting of the Federal complaint was alleged, we cannot reject the circuit court's decision herein.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.