JOHN CALCAGNO *et al.*, Plaintiffs-Appellants, v. PERSONALCARE HEALTH MANAGEMENT, INC., Defendant-Appellee.—JOHN CALCAGNO *et al.*, Plaintiffs-Appellees, v. PERSONALCARE HEALTH MANAGEMENT, INC., Defendant-Appellant.

Fourth District   Nos. 4—90—0128, 4—90—0147 cons.

Opinion filed January 17, 1991.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for John Calcagno and Lois Calcagno.

Joseph D. Pavia, of Kirtley-Pavia-Marsh, of Urbana, for Personalcare Health Management, Inc.

PRESIDING JUSTICE LUND delivered the opinion of the court:

The principal issue in these consolidated appeals is whether an insurer who pays a claim prior to being sued for payment thereof may nevertheless be held liable for damages stemming from its unreasonable delay in settling the claim. We answer this question in the affirmative.

During the relevant time period, an infant daughter of plaintiffs John and Lois Calcagno required an apnea monitor. The Calcagnos are members of a health maintenance organization (HMO) of which defendant Personalcare Health Management, Inc. (Personalcare), is the admin-

istrator. In February 1989, the Calcagnos sought reimbursement for the apnea monitor, but Personalcare refused to pay their claim. The Calcagnos referred the matter to their attorney, who wrote Personalcare on March 7, 1989, requesting payment for the apnea monitor. Personalcare responded by stating that it denied coverage because the event which necessitated the apnea monitor took place before the effective date of coverage for the Calcagnos' daughter under Personalcare's HMO plan.

On June 13, 1989, Personalcare apparently agreed to have its grievance committee reconsider the Calcagnos' claim in an expedited manner. A hearing was held before the committee on July 18, 1989. In a letter dated August 7, 1989, one member of the grievance committee indicated that on the basis of the information presented at the hearing, he supported the Calcagnos' position, but felt that ideally, the hearing should be reconvened for the purpose of allowing the Calcagnos' attorney to question the physician who placed the Calcagnos' daughter on an apnea monitor.

On August 9, 1989, Personalcare advised the Calcagnos' attorney that it would pay their claim in full. The claim was paid on August 14, 1989.

On August 29, 1989, the Calcagnos requested an additional payment from Personalcare in the amount of $792, which represented the attorney fees they incurred in pursuing their claim for reimbursement for the apnea monitor. Not having received the additional amount requested, the Calcagnos filed a small claims complaint against Personalcare on September 7, 1989. The complaint requested damages in the amount of $2,500. The stated basis for this claim was Personalcare's "vexatious and unreasonable delay" in reimbursing the Calcagnos for the cost of the apnea monitor, "in violation of the Defendant's obligation to deal with Plaintiffs in good faith, and fairly, and/or its obligations under Section [155] of the Insurance Code [(Ill. Rev. Stat. 1989, ch. 73, par. 767)]."

In a bill of particulars filed October 16, 1989, the Calcagnos stated the following are the components of the damages requested in their small claims complaint: (1) attorney fees, costs, and expenses, including costs of copies of medical records, incurred in obtaining payment for the apnea monitor; (2) wages they lost and travel expenses they incurred as a result of attending the hearing before Personalcare's grievance committee; (3) "[p]rejudgment, statutory, interest on the Plaintiffs' claim for damages, as well as interest on the loss of use of funds, which were paid by the Plaintiffs to Pulmocare Medical Supply, Inc. [supplier of the apnea monitor], in order to avoid the

institution of any collection action against [the Calcagnos]"; (4) damages for emotional distress, "including embarrassment, and harassment" suffered as a result of Personalcare's initial denial of the claim; (5) "[s]tatutory damages under Section [155] of the Insurance Code [(Ill. Rev. Stat. 1987, ch. 73, par. 767)]"; (6) punitive damages; and (7) attorney fees, costs, and expenses incurred in the present action. The Calcagnos stated that some of these damages are being sought in the alternative.

On October 20, 1989, Personalcare filed a section 2—619 (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) motion to dismiss the Calcagnos' complaint with prejudice. Personalcare stated that there had been no vexatious and unreasonable delay in payment of the Calcagnos' claim, and that the damages the Calcagnos sought could not be awarded under either common law or statutory cause of action theories. Personalcare subsequently agreed that the question of whether there had been an unreasonable and vexatious delay in payment could not be adjudicated in proceedings on a motion to dismiss, and the Calcagnos filed a response to the remaining portions of Personalcare's motion to dismiss on November 2, 1989.

In a memorandum opinion and order filed January 26, 1990, the circuit court held that the Calcagnos can maintain a statutory action against Personalcare pursuant to section 155 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1987, ch. 73, par. 767) based on Personalcare's alleged vexatious and unreasonable delay in paying the Calcagnos' claim, notwithstanding the fact that Personalcare has already paid the entire amount of the claim. The court further held that the Calcagnos may recover as damages in such an action the attorney fees incurred in obtaining payment of the claim, even though it was not necessary for them to file suit in order to obtain payment. However, the court held that the Calcagnos cannot maintain a common law tort or contract action against Personalcare based on alleged vexatious and unreasonable delay in payment of their claim and dismissed with prejudice the Calcagnos' complaint to the extent it was premised on these theories. The circuit court included a Rule 304(a) (107 Ill. 2d R. 304(a)) finding in its order with regard to the portion of the Calcagnos' complaint which it dismissed.

On February 8, 1990, the Calcagnos filed a notice of appeal from the portion of the circuit court order which held that they cannot sue Personalcare on common law tort or contract theories, docketed No. 4—90—0128. In the meantime, Personalcare filed a motion for a Rule 308 (107 Ill. 2d R. 308) finding permitting it to file in this court an application for leave to appeal the portion of the circuit court order

which held that the Calcagnos can maintain an action against Personalcare pursuant to section 155 of the Code, and the circuit court allowed this motion on February 14, 1990. The court stated the issue involved in Personalcare's Rule 308 application for leave to appeal is:

"Does Section 155 of the Illinois Insurance Code (Ill. Rev. Stats., Chapter 73, para. 767) authorize a cause of action for unreasonable delay in settling an insurance claim for the purpose of recovering attorney's fees and other costs incurred in settling the claim if all policy benefits are paid in full by the insurer before litigation commences[?]"

On March 15, 1990, this court allowed Personalcare's Rule 308 application for leave to appeal, docketed No. 4—90—0147. This court subsequently consolidated the Calcagnos' and Personalcare's appeals and granted Personalcare leave to have its appeal treated as a cross-appeal.

Central to the contentions of both the Calcagnos and Personalcare is section 155 of the Code, which presently reads in pertinent part:

"Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." Ill. Rev. Stat. 1987, ch. 73, pars. 767(1)(a), (1)(b), (1)(c).

In arguing that the circuit court erred in dismissing their complaint to the extent it requests damages based on common law theories, the Calcagnos assert that in every contract between an insurer and insured, there is an implied covenant of good faith and fair dealing. They further contend that an action for breach of this covenant sounds both in tort and in contract, and that both tort and breach of contract damages ordinarily are recoverable if a breach of this covenant is established. The Calcagnos maintain that the damages which

they allegedly suffered as a result of Personalcare's failure to timely pay their claim are recoverable even under the more limited rules of liability which apply in breach of contract actions, since these damages were contemplated or could have been contemplated by the parties as resulting from Personalcare's failure to timely pay amounts due the Calcagnos under Personalcare's HMO plan.

The Calcagnos note that section 155 of the Code is generally applicable to HMOs. (Ill. Rev. Stat. 1987, ch. 111½, par. 1409A.) Acknowledging that there is a split of authority on the question, the Calcagnos contend that section 155 does not preempt a common law action against an insurer for breach of the implied covenant of good faith and fair dealing. The Calcagnos suggest that since proof of different facts may be necessary to establish a breach of the implied covenant of good faith and fair dealing as opposed to establishing eligibility for the additional costs listed in section 155, and the damages or recoverable additional costs may be different and distinct, a plaintiff should not be precluded from pursuing both section 155 and common law remedies to the extent that the damages or additional costs sought are not duplicitous.

Personalcare contends that section 155 of the Code preempts all common law actions seeking damages based on alleged delay in payment of amounts due under insurance policies, including emotional distress actions. Personalcare also asserts that awarding the Calcagnos damages consisting of the attorney fees they incurred in pursuing their claim for benefits under Personalcare's HMO plan would violate the "American Rule," which generally precludes attorney fee awards to prevailing parties in litigation. Personalcare further contends that by virtue of the supreme court's decision in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, the Calcagnos may not recover in a tort action (1) lost wages which resulted from their visits to Personalcare in regard to obtaining reimbursement for the apnea monitor, or (2) interest on money which they paid to the supplier of the apnea monitor before Personalcare paid their claim. Personalcare asserts that under the *Moorman* doctrine, these are economic losses which may not be recovered in a tort action. Personalcare further argues there is nothing in the HMO certificate under which the Calcagnos claimed benefits, or in section 155, which would provide a basis for the Calcagnos recovering these alleged damages on either a contractual or statutory theory. Personalcare also maintains that because the damages which the Calcagnos seek are not liquidated, they have no statutory entitlement to prejudgment interest on any recovery they might obtain from Personalcare.

With respect to whether the Calcagnos are entitled to additional costs under section 155 of the Code, Personalcare first asserts that by virtue of the following statement in their brief, the Calcagnos have conceded that they may not recover under section 155 the attorney fees incurred in obtaining payment from Personalcare of the cost of the apnea monitor:

> "[A]ttorneys' fees are generally not recoverable absent statute or contract. Paragraph 767 [section 155] of the Insurance Code, provides for the recovery of attorneys' fees after litigation has been filed. Only under the common law could expenses and attorneys' fees be recoverable either as a part of the jury's assessment of punitive damages, or in conjunction with an assessment of consequential damages."

On the merits of this question, Personalcare contends an award of attorney fees when all insurance benefits claimed have been paid would be contrary to the legislative intent in enacting section 155. Personalcare argues that the statutory phrase "it *appears* to the court that such action or delay *is* vexatious and unreasonable" (emphasis added), and the phrase "part of the taxable costs *in* the action" (emphasis added) support the view that section 155 permits awards of only those attorney fees incurred in litigation relating to benefits claimed to be due under insurance policies and does not permit attorney fee awards where all amounts claimed under an insurance policy were paid prior to the beginning of litigation. (Ill. Rev. Stat. 1987, ch. 73, par. 767(1).) Personalcare further states that under the facts of this case, there could be no section 155 award of additional costs in addition to "reasonable attorney fees" and "other costs," since, under subsections 1(a) and 1(c) of section 155, the amount of any such additional costs cannot exceed 25% of the amount of unpaid benefits the insured is entitled to recover from the insurer, or the excess of the amount of unpaid benefits (exclusive of costs) recovered over the insurer's highest prelitigation settlement offer. Personalcare also suggests that the "unreasonable delay in settling a claim" language in section 155(1) (Ill. Rev. Stat. 1987, ch. 73, par. 767(1)) refers only to the situation where an insurer delays processing a claim by simply "sitting on it," without either allowing it or denying it. Personalcare asserts the interpretation of section 155 for which the Calcagnos contend (1) would destroy the incentive insurers have to settle claims prior to litigation and thus avoid imposition of section 155 penalties, and (2) could result in the courts becoming involved in every disputed insurance claim.

In their reply brief, the Calcagnos suggest that in determining the

applicability of the "American Rule" to requests for reimbursement for attorney fees on common law theories, the crucial question should be whether or not the fees were incurred in litigation. The Calcagnos concede their claims for lost wages and compensation for loss of use of money are economic losses which, under the *Moorman* doctrine, cannot be recovered in a tort action. However, they assert that they are entitled to recover these damages from Personalcare on a contract theory. With regard to their claim for emotional distress damages, the Calcagnos state they are not asserting a claim for the intentional infliction of emotional distress, but rather seek compensation for emotional distress as an ordinary element of their damages.

The Calcagnos respond to Personalcare's arguments concerning their claim for additional costs under section 155 by stating that making entitlement to such additional costs dependent on filing suit prior to payment of disputed insurance claims would discourage negotiation and encourage the filing of suit with respect to disputed claims as soon as the "threshold point of unreasonable and vexatious delay is met." The Calcagnos acknowledge section 155 does not expressly provide for recovery of prelitigation attorney fees. However, they argue that the term "other costs" contained in that section is sufficiently broad to encompass prelitigation attorney fees, which they contend should be recoverable under section 155 in order to put insureds in as good a position as they would have occupied had their claims been timely paid. The Calcagnos suggest (1) in complicated cases, a contrary holding would effectively preclude prelitigation negotiations with the assistance of an attorney, and (2) in cases where an insurer's liability is clear, adoption of their position will discourage insurers from waiting to pay benefits until insureds say they have consulted with an attorney or are going to consult with an attorney and file suit.

■ As a preliminary matter, we hold that the statement in the Calcagnos' opening brief concerning awards of prelitigation attorney fees under section 155 did not amount to a concession that such fees may not be awarded under that section. The Calcagnos' opening brief dealt with their appeal of that part of the circuit court's order which held they cannot maintain common law causes of action against Personalcare. Therefore, the Calcagnos were under no duty to present argument in their opening brief as to the amounts which are recoverable under section 155. In their reply brief, which serves as their principal brief with respect to Personalcare's cross-appeal involving the question of the amounts recoverable under section 155, the Calcagnos argue that prelitigation attorney fees are recoverable under

section 155. For these reasons, we cannot say that the Calcagnos have conceded this point.

In determining the meaning of section 155 of the Code as it relates to the issues presented by these appeals, we must initially consider the statutory language itself. If the legislative intent can be ascertained from the plain and ordinary meaning of the statutory language, we must give effect to that intent without resorting to other aids in construction. *Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533.

■ Section 155 contains no language which specifically provides for awards of compensatory damages. The only amounts which may be recovered by virtue of section 155 are the various specified items which the court may "allow as part of the taxable costs in the action." The term "costs" ordinarily refers to the expenses of prosecuting or defending an action, excluding attorney fees. (Black's Law Dictionary 312 (5th ed. 1979).) It is, of course, the legislature's prerogative to expand the meaning of this term to include other items. However, statutes permitting recovery of costs, being in derogation of the common law, must be strictly construed (*Commissioners of Lincoln Park v. Schmidt* (1946), 395 Ill. 316, 69 N.E.2d 869), and litigants should not be permitted to recover as costs items other than those specified in the statute authorizing such awards.

■■ The costs which may be awarded under section 155 include no elements of compensatory damages. Indeed, subsections 1(a) and 1(c) of the statute indicate that there must be an award of compensatory damages other than the costs described in the statute in order for there to be a basis for calculating the amount of some of the costs which are recoverable. Therefore, the plain language of section 155 establishes that it does not preempt any common law action for recovery of compensatory damages based on unreasonable delay in settlement of an insurance claim. However, the legislature, by including in section 155 a provision which allows the recovery, "as costs," of fairly large sums which are essentially penal in nature, indicated an intent to preempt the field of punitive damage awards based on unreasonable delay in settlement of insurance claims. (*Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156; see also *Lynch v. Mid-America Fire & Marine Insurance Co.* (1981), 94 Ill. App. 3d 21, 418 N.E.2d 421.) To the extent that other decisions interpreting section 155 of the Code (*e.g., Combs v. Insurance Co.* (1986), 146 Ill. App. 3d 957, 497 N.E.2d 503; *Trautman v. Knights of Columbus* (1984), 121 Ill. App. 3d 911, 460 N.E.2d 350; *Kinney v. St. Paul Mercury Insurance Co.* (1983), 120 Ill. App. 3d 294, 458 N.E.2d 79)

have reached a different result, we conclude that they disregard the plain language of the statute, and we decline to follow them.

We also find inapposite *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 448 N.E.2d 866, on which Personalcare places great reliance. In *Robertson*, the plaintiff sought to recover, in a common law action, damages for the tort of "outrage" on the basis that an insurer handled his workers' compensation claim in a "maliciously deceptive" manner, which allegedly resulted in severe emotional distress. (*Robertson*, 95 Ill. 2d at 445-46, 448 N.E.2d at 868-69.) The court held the action was barred by the general exclusivity provision of the Workmen's Compensation Act (Act) (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a)), as well as by section 19(k) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(k)). At the pertinent time, section 19(k) of the Act provided:

> "In case[s] where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay." Ill. Rev. Stat. 1973, ch. 48, par. 138.19(k).

Section 19(k) of the Act, unlike section 155 of the Code, does not recognize the existence of a common law tort action for the recovery of compensatory damages for delay in the payment of benefits. Instead, it expressly provides that the amount which may be awarded thereunder is "compensation additional to that otherwise payable." This language, together with the general exclusivity provision of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a)), provides ample support for the *Robertson* decision. By contrast, the Code does not contain an exclusivity provision, and section 155 does not state that the amounts recoverable thereunder as additional costs are compensation for delay in payment of policy benefits. Because of the substantially different statutory language involved in *Robertson*, that decision provides no support for Personalcare's position that section 155 of the Code preempts common law actions for recovery of compensatory damages attributable to delay in payment of insurance benefits.

We next consider whether damages may be recovered for unreasonable delay in settlement of insurance claims where all benefits

due have been paid before a lawsuit is filed. Section 155 is applicable to actions (1) "by or against [an insurance] company wherein there is in issue the liability of [an insurance] company on a policy or policies of insurance or the amount of the loss payable thereunder," or (2) "for an unreasonable delay in settling [an insurance] claim." (Ill. Rev. Stat. 1987, ch. 73, par. 767(1).) Section 155 does not specify that a portion of the amount claimed under the subject insurance policy must remain unpaid when an action "for an unreasonable delay in settling [an insurance] claim" is filed, in order for the plaintiff to be eligible for an allowance of additional costs pursuant to that section. Rather, the plain language of section 155 indicates that the amounts specified therein may be assessed as additional costs in all instances in which there has been a vexatious and unreasonable delay in payment of benefits due under an insurance policy—regardless of whether all of the benefits are paid prior to the filing of a lawsuit seeking damages stemming from the delay in settling the claim.

In *Lawson v. State Farm Mutual Automobile Insurance Co.* (1986), 256 Ga. 285, 347 S.E.2d 565, the Georgia Supreme Court was confronted with a situation in which a person injured by a holder of an automobile liability policy sought statutory penalties, attorney fees, and punitive damages from the tortfeasor's insurer for failure to timely pay benefits due under the insured's policy, even though all of the injured party's claims for benefits were paid at least seven months prior to his filing suit. The court held that the plaintiff could maintain such an action. The statutory language which provided the basis for the *Lawson* decision prescribed a specific time frame for payment of insurance benefits and thus differed in that respect (and in other respects as well) from the statutory language at issue in the present case. We nevertheless find the following statements in *Lawson* pertinent to the case at bar:

"If an insurer could avoid these penalties and damages by making payment after the deadline, there would be no incentive in the statute to meet the deadline. *** Payment thereafter to a claimant's medical suppliers, as in this case, should not prevent a suit by the claimant for the penalties and damages. To interpret the statute otherwise would make it possible for unscrupulous insurers to ignore the due date of the statute with impunity so long as payment to suppliers is made sometime before suit for benefits is brought. *** It is not simply the total failure to pay, but the failure to make *timely* payment which gives rise to penalties and damages." (Emphasis in original.) *Lawson*, 256 Ga. at 286-87, 347 S.E.2d at 566.

Under facts such as those here present, prohibiting recovery of damages incurred as a result of unreasonable delay in the settlement of an insurance claim would permit dilatory insurers to delay payment of insurance benefits with impunity, so long as payment is made before a suit for recovery of the benefits is filed. Contrary to Personalcare's contention, adoption of the Calcagnos' position will not destroy the incentive for insurers to settle claims prior to the beginning of litigation. To the contrary, it will encourage insurers to act with the utmost good faith at all steps of the claim investigation and negotiation process and to thereby avoid payment of both prelitigation attorney fees and attorney fees incurred in litigation. Moreover, under the conclusion we reach, courts need not become involved in every disputed insurance claim if all parties engage in good-faith efforts to settle legitimate claims on terms which are fair to both the beneficiary and the insurer.

■ We also find unpersuasive Personalcare's arguments based on the specific language of section 155. The "amount which the court or jury finds such party is entitled to recover," mentioned in subsections 1(a) and 1(c) (Ill. Rev. Stat. 1987, ch. 73, pars. 767(1)(a), (1)(c)), refers to all amounts which are recoverable in actions against insurers, including damages incurred prior to payment of benefits in situations where all benefits claimed are paid prior to litigation. Furthermore, "the amount, if any, which the company offered to pay in settlement of the claim," mentioned in subsection 1(c) (Ill. Rev. Stat. 1987, ch. 73, par. 767(1)(c)), encompasses all offers made in settlement negotiations pertaining to both claims for payment of policy benefits and claims for damages for unreasonable delay in settlement of benefit claims, regardless of whether any policy benefits remain unpaid at the time of the negotiations.

■ We also do not agree that the use of the present tense in subsection (1) of section 155 proscribes awards of additional costs thereunder on the basis of vexatious and unreasonable delay where all benefits were paid before suit was filed. All statutory language should be given some effect. (*County of Winnebago v. Industrial Comm'n* (1966), 34 Ill. 2d 332, 215 N.E.2d 258.) In order to give some significant effect to the words "or for an unreasonable delay in settling a claim," we must assume the legislature intended to permit awards of additional costs pursuant to section 155 even where all insurance benefits due were paid prior to the beginning of litigation.

We next consider whether prelitigation attorney fees may be awarded as additional costs pursuant to section 155. As previously indicated, compensatory damages may not be awarded pursuant to sec-

tion 155. Instead, section 155 leaves to the common law the determination of whether compensatory damages may be recovered on the basis of alleged unreasonable delays in settlement of insurance claims.

■■ ■ Attorney fees, at least to the extent that they were not incurred in the same action in which they are awarded, may be recovered under the common law as an element of compensatory damages in cases where the defendant's tortious conduct proximately caused the plaintiff to incur them. (*E.g., Tan v. Boyke* (1987), 156 Ill. App. 3d 49, 508 N.E.2d 390; *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47.) This is an exception to the "American Rule," which provides that, absent a statute or contract to the contrary, attorney fees and the ordinary expenses and burdens of litigation are not recoverable by the prevailing party. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) Therefore, attorney fees incurred in prelitigation negotiations regarding insurance claims may be recovered as an element of the plaintiff's compensatory damages if the evidence establishes that there was an unreasonable delay in settlement of the claim. However, these fees may not be recovered as a part of the "reasonable attorney fees" referred to in section 155. The only attorney fees the circuit court may award as costs pursuant to section 155 are fees incurred in the legal proceedings to which that section refers.

There remains to be considered the specific elements of the compensatory damages which the Calcagnos may recover under common law theories for Personalcare's alleged unreasonable delay in settlement of their claim. As we have just stated, attorney fees may be recovered under the common law as an element of compensatory damages to the extent the defendant's tortious conduct proximately caused the plaintiff to incur them and they were not incurred in the same litigation in which they are recovered. We perceive no reason why this principle should be inapplicable to prelitigation attorney fees incurred in seeking benefits due under an HMO plan.

■■ ■ As Personalcare points out, economic losses generally may not be recovered on the tort theories of negligence, strict liability, or negligent misrepresentation. (*Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443.) Such losses also may not be recovered on the tort theory of wilful and wanton breach of contract. (See *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181.) Economic losses encompass objectively verifiable monetary losses, including loss of use of property, costs of repair or replacement, loss of employment, and loss of business or employment opportunities. (*Collins v. Reynard* (1990), 195 Ill. App. 3d 1067, 553 N.E.2d 69.) Thus, to the extent the Calcagnos' common law claims are premised on neg-

ligence or wilful and wanton breach of contract, they may not recover the attorney fees, lost wages, travel expenses, and compensation for loss of use of funds which they seek. The Calcagnos could, however, recover these items of damages in a contract action based on breach of the implied covenant of good faith and fair dealing in the insurance contract between them and Personalcare (*Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75), since such damages reasonably could be deemed to have been within the contemplation of the parties when Personalcare undertook to provide for the Calcagno family's healthcare needs through the HMO plan it administers. *Underground Construction Co. v. Sanitary District* (1937), 367 Ill. 360, 369, 11 N.E.2d 361, 365.

■■■ Personalcare has misinterpreted the Calcagnos' claim for damages for emotional distress. The Calcagnos do not claim damages for the separate tort of intentional infliction of emotional distress. Rather, they request damages for emotional distress as a component of the damages to which they would be entitled on a contract theory, or on a tort theory other than intentional infliction of emotional distress. However, we need not address the general availability of such a claim because the facts alleged in the present case could not sustain a recovery for emotional distress under existing theories of liability. As indicated in *Combs v. Insurance Co.* (1986), 146 Ill. App. 3d 957, 962-63, 497 N.E.2d 503, 507, the legislature, by enactment of the provisions of the Insurance Code, evidenced an intent to keep the issue of unreasonable and vexatious insurance claim denials under its power and control. One might conclude, from this intent, that certain limitations exist as to claim liability. To open the insurance industry to claims for emotional distress whenever there have been problems in determining the outcome of a claim might best be left to the legislative branch.

■■■ We finally consider whether the Calcagnos would be entitled to prejudgment interest on any of the amounts they claim. "Creditors shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." (Ill. Rev. Stat. 1989, ch. 17, par. 6402.) Although the damages the Calcagnos request are related to an HMO plan certificate of coverage, all benefits due by virtue of the certificate have been paid. In order to determine whether the Calcagnos may recover the damages and costs they seek in the present action, it will be necessary to consider the conduct of both Personalcare and the Calcagnos at the pertinent times, the writ-

ten communications which Personalcare and the Calcagnos' attorney exchanged before Personalcare reimbursed the Calcagnos for the cost of the apnea monitor, and the language of the HMO certificate of coverage issued to the Calcagnos. Under these circumstances, the Calcagnos' suit is not premised on "an instrument of writing," and the Calcagnos are not entitled to prejudgment interest on any amounts they may recover in this action. See *Ry. Passenger & Freight Conductors' Mutual Aid & Benefit Association v. Tucker* (1895), 157 Ill. 194, 42 N.E. 398.

In cause No. 4—90—0128, the decision of the circuit court is reversed to the extent it holds the Calcagnos may not maintain a common law action against Personalcare seeking recovery of compensatory damages for unreasonable delay in settlement of their claim for benefits. In cause No. 4—90—0147, the portion of the circuit court decision which holds that the Calcagnos may maintain the present action even though Personalcare has paid them all benefits which they requested is affirmed. This case is remanded to the circuit court for further proceedings consistent with this opinion.

No. 4—90—0128, Reversed and remanded.
No. 4—90—0147, Affirmed and remanded.

GREEN and KNECHT, JJ., concur.