No. 2--06--0359          Filed:  7-26-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| YORK CENTER FIRE PROTECTION DISTRICT, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 04--L--816 |
| | ) | |
| KUBIESA, SPIROFF, GOSSELAR AND ACKER, P.C., and JOHN FENNELL, | ) ) | Honorable |
| | ) | John T. Elsner, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, York Center Fire Protection District, appeals from the trial court's dismissal, with prejudice, of its second amended complaint alleging professional negligence against defendants, Kubiesa, Spiroff, Gosselar & Acker, P.C., and its agent, John Fennell.  Plaintiff argues that the trial court erred in concluding that it failed to adequately plead damages.  For the reasons that follow, we affirm.

On October 3, 2005, plaintiff filed its second amended complaint against defendants, alleging the following.  In September 2001, plaintiff determined that a referendum was necessary to increase its revenue and asked defendants, specifically Fennell, to make recommendations regarding a referendum.  Defendants were aware of the amount of increased tax revenue that plaintiff desired to

obtain through the referendum process. Two public questions were placed on the ballot on November 5, 2002, based on defendants' final recommendations.

Prior to voting, the voting public was informed that the upcoming referendum would result in a 35% increase to the taxable rate; however, in reality, the taxable rate recommended by defendants was not more than 10%. The voting public was also advised that plaintiff would receive approximately $400,000 in funding under the tax increase; however, the most that could be obtained was $90,000. The referendum passed, and plaintiff later learned that its "intent and purpose behind the referendum had not been met."

According to plaintiff, as a result of its reliance on defendants' erroneous legal advice, it sustained losses of no less than $400,000 in property tax revenue. "[P]laintiff had presented the voters with a plan for increased operations, facilities, and equipment, which could not be realized due to the recommendations of the defendant, and had to be put on reserve for two years." Plaintiff was also required to submit a subsequent referendum to voters, which passed. According to plaintiff, from the passage of the first referendum to the passage of the second referendum, it suffered damages "identifiable at no less than 25% to 30% loss of revenue, which amounts to in excess of $200,000.00 per year."

On October 7, 2005, defendants moved to dismiss the complaint under section 2--615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2--615 (West 2004)). Defendants argued that plaintiff failed to adequately plead both proximate cause and damages. Plaintiff filed a response, and defendants filed a reply. On March 6, 2006, the trial court granted defendants' motion. The trial court held that although "[t]here is no question that the plaintiff has pled proximate cause," plaintiff

failed to plead damages. Plaintiff timely appealed. The issue before the court is whether the complaint states a cause of action upon which relief could be granted.

A motion to dismiss under section 2--615 of the Code attacks the legal sufficiency of a complaint by alleging defects appearing on its face and should be granted if the complaint does not allege sufficient facts to state a cause of action. Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 484 (1994). When reviewing a motion to dismiss under section 2--615, the court must accept as true all well-pleaded facts and interpret the allegations in a light most favorable to the plaintiff. Young v. Bryco Arms, 213 Ill. 2d 433, 441 (2004). "If, however, after any legal and factual conclusions are disregarded, the complaint does not allege sufficient facts to state a cause of action, the motion to dismiss should be granted." Rockford Memorial Hospital v. Havrilesko, 368 Ill. App. 3d 115, 120 (2006). Our review is de novo. T&S Signs, Inc. v. Village of Wadsworth, 261 Ill. App. 3d 1080, 1084 (1994).

A plaintiff in a legal malpractice action must plead the following: (1) the existence of an attorney-client relationship; (2) a duty arising from that relationship; (3) a breach of that duty by the defendant; (4) proximate cause; and (5) damages. Claire Associates v. Pontikes, 151 Ill. App. 3d 116, 122 (1986). Here, we agree with the trial court that plaintiff failed to plead damages.

Plaintiff pleaded that, if the first referendum had been proper, plaintiff would have obtained greater revenue in the period between the passage of the first referendum and the passage of the second. However, a municipal corporation is not entitled to make a profit (Schuman v. Chicago Transit Authority, 407 Ill. 313, 320 (1950)), and thus a loss of money, in and of itself, cannot damage

it. As the trial court put it, "a municipal corporation cannot accumulate money for the purpose of accumulating money." Accordingly, plaintiff had to plead damages beyond the mere loss of money.

To that end, plaintiff attempted to plead that it was damaged by the delay in obtaining its desired revenue. But plaintiff did not succeed. It is true that, in a legal malpractice action, a plaintiff may sue for the loss of the use of money, which ordinarily is an economic loss that the Moorman doctrine precludes in tort. See Calcagno v. Personalcare Health Management, Inc., 207 Ill. App. 3d 493, 501 (1991) (loss of use of money is subject to Moorman doctrine); Radtke v. Murphy, 312 Ill. App. 3d 657, 664-65 (2000) (legal malpractice is exception to Moorman doctrine). However, that loss generally is measured in interest (see Illinois State Toll Highway Authority v. American National Bank & Trust Company of Chicago, 162 Ill. 2d 181, 199 (1994)), and plaintiff here did not allege that it had lost interest. Instead, it alleged only that it had to wait two years to upgrade its "operations, facilities, and equipment."

Undoubtedly, plaintiff was temporarily unable to implement its plan, but it simply did not allege any resulting loss. It did not plead that its upgrades were so immediately necessary that it was forced to spend alternative funds to effect them. It did not plead that its outmoded attributes subjected it to liability for some unfortunate accident. It did not even plead that it was forced to incur attorney fees or other costs to submit the second referendum. Again, plaintiff alleged only that it was delayed in implementing its plan. That, without more, did not establish damages. See Harlev v. Sanitary District of Chicago, 226 Ill. 213, 225 (1907) (public body may not recover damages for delay in completion of public improvement, as injury is mere public inconvenience and is incapable of measurement). Accordingly, the trial court properly granted defendants' motion to dismiss.

No. 2--06--0359

We affirm the judgment of the circuit court of Du Page County.

Affirmed.

ZENOFF, J., concurs.

JUSTICE O'MALLEY, dissenting:

I disagree with the majority's conclusion that plaintiff did not adequately plead damages in this case. Plaintiff pleaded that "damages as a result of the passage of the first referendum to the second referendum are identifiable at no less than 25% to 30% loss of revenue, which amounts to in excess of $200,000.00 per year." Reading this allegation liberally, as I must at this stage in proceedings (see Young, 213 Ill. 2d at 441), I infer the allegation that the referendum was for ongoing revenue, and not just for the two years preceding the second referendum. My reading is consistent with the Fire Protection District Act (Act), which provides that the ordinance allowing the levy and collection of taxes for a fire district "constitutes authority *** to extend taxes annually at the rate so provided." (Emphasis added.) 70 ILCS 705/14 (West 2004). Thus, I disagree with the majority that "plaintiff alleged only that it was delayed in implementing its plan." Slip op. at 4. I read plaintiff as alleging that, until the proper referendum passed, each year's installment of revenue was lower than plaintiff would have otherwise received. In other words, I interpret plaintiff as alleging that it intended the original referendum to result in its receiving $400,000 each revenue period until the voting public reversed the original referendum. To illustrate with numbers, if plaintiff received only $90,000 in the first installment, but received the full $400,000 in the second installment, it received $310,000 less than the $800,000 it would have received.

-5-

Though plaintiff may have been able to implement many of the improvements it sought to make once the proper referendum was passed, the delay in implementing the first round of improvements was not the only harm plaintiff suffered, because plaintiff could have made more of the improvements if it had also received the money after the first referendum. I read plaintiff's second amended complaint as alleging that it essentially was unable to implement the full first round of improvements until it received the money that otherwise would have gone to a second round of improvements. Then, I infer, the first round of improvements was implemented, but the second round was not made, and so on. Plaintiff will perpetually forgo one year of improvements until the shortfall is corrected. This is not just a delay--plaintiff lost one round of improvements. Put plainly with the same illustrative numbers I use above, by the time the second referendum passed, plaintiff should have been able to implement a total of $800,000 worth of improvements, but, due to defendants' alleged negligence, it was able to implement only a total of $490,000. No matter how many installments plaintiff receives, plaintiff will still have received less revenue due to the shortfall from the first referendum.

> The majority holds that plaintiff's alleging a loss of revenue is not enough to plead damages: "[A] municipal corporation is not entitled to make a profit [citation], and thus a loss of money, in and of itself, cannot damage it. As the trial court put it, 'a municipal corporation cannot accumulate money for the purpose of accumulating money.' Accordingly, plaintiff had to plead damages beyond the mere loss of money." Slip op. at 3-4.

First, plaintiff specifically itemized in its complaint how it would have spent the missing money. Plaintiff alleged that it intended to use its increased revenue "for increased operations, facilities, and

equipment," including "building renovation ($1.2 million \*\*\*), purchase of a heavy rescue squad ($386,000.00), a new ambulance ($157,000.00), hiring of a full-time fire chief ($76,000.00), and hiring of two part-time firefighters ($70,000.00)." The Act specifically allows a fire protection district to "accumulate funds for the purposes of building, repairing and improving firehouses," among other things. 70 ILCS 705/14 (West 2004). Therefore, plaintiff did not seek to "accumulate money for the purpose of accumulating money," but, rather, if it sought to accumulate money, it planned to do so for purposes specifically allowed under the Act.

Second, I wonder how the majority would respond to a criminal defendant who is convicted of embezzling from a municipal corporation and who appeals on the basis that "a loss of money, in and of itself, cannot damage" a municipality.

Third, even assuming that plaintiff could not accumulate money for any purpose, I do not agree with the above-quoted statement from the majority. I do not think it follows that, because a municipal corporation cannot profit, it cannot be damaged by a loss of money. Rather, I believe that, if a municipal corporation cannot profit, then, as the trial court said, it cannot "accumulate money for the purpose of accumulating money." However, it may still accumulate assets and collect revenue, and, if someone causes the municipality to lose or forgo those assets or prevents the municipality from realizing that revenue, the municipality is damaged. Revenue is not the same as profit. Plaintiff may not have been able to keep the $310,000 as profit, but it could have spent it on an ambulance.

I find precedent to support the notion that an entity may be damaged by loss of revenue even if it is not entitled to profit from the revenue. For example, in Jewish Hospital of St. Louis, Missouri v. Boatmen's National Bank of Belleville, 261 Ill. App. 3d 750 (1994), the plaintiffs, two not-for-

profit entities that were remainder beneficiaries of two testamentary trusts, sued, inter alia, the attorney who drafted the will and represented the estate, on the ground that the attorney's negligence caused the estate "to unnecessarily pay $878,709 in estate taxes and interest, which reduced the amount plaintiffs [received]." Jewish Hospital, 261 Ill. App. 3d at 753. Though it did not specifically address the issue here, the appellate court reversed the trial court's grant of summary judgment for defendants and held that the defendant lawyer could be held liable to the not-for-profit plaintiffs for his alleged negligence in drafting the will. Jewish Hospital, 261 Ill. App. 3d at 761.

In City of Springfield v. Allphin, 74 Ill. 2d 117 (1978), the municipal plaintiffs sued the State on the ground that the act that allowed the State to withhold as a collection fee 4% of municipal taxes before distributing them to municipalities had been amended and the collection amount reduced to 2%, yet the State wrongfully withheld 4% after the effective date of the amendment. The supreme court agreed, and it remanded the cause for the trial court to fashion injunctive relief "to reduce the amount of such taxes withheld by the State until the earlier overwithholding is compensated for." Allphin, 74 Ill. 2d at 131. (The court did not order interest payments due to issues with sovereign immunity. See City of Springfield v. Allphin, 82 Ill. 2d 571, 579-81 (1980).)

The above cases appear to contemplate, as I do, that a municipality may be harmed by lost revenue, even if it could not have converted that revenue to profit. I would apply that reasoning to this case and hold that plaintiff has alleged damages in that it lost revenue as a result of defendant's negligence.