AMALENDU MAJUMDAR *et al.*, Plaintiffs-Appellants, v. MICHAEL H. LU-
RIE *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—94—2611

Opinion filed July 20, 1995.

Vurdelja & Heaphy, of Chicago (George N. Vurdelja, Jr., John M. Heaphy, Jr., and Griswold L. Ware, of counsel), for appellants.

Hinshaw & Culbertson, of Chicago (George W. Spellmire, Stephen R. Swofford, Caroline A. Mondschean, and Kristin E. Hutson, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs appeal from orders of the circuit court dismissing their three-count second-amended complaint and denying them leave to replead. Because the complaint in issue was dismissed in response to the defendants' motion brought pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1992)), the only question before this court is whether the dismissed counts stated causes of action. The issue is one of law and our review is *de novo*. *Metrick v. Chatz* (1994), 266 Ill. App. 3d 649, 639 N.E.2d 198.

In determining whether the plaintiffs stated causes of action upon which relief could be granted, we must accept as true all well-pled facts in their complaint (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478), and must draw all reasonable inferences from those facts which are favorable to the plaintiffs (*Your Style Publications, Inc. v. Mid Town Bank & Trust Co.* (1986), 150 Ill. App. 3d 421, 501 N.E.2d 805). However, we do not accept as true any conclusions of law or fact contained within the complaint which are unsupported by allegations of specific facts upon which those conclusions rest. *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 448 N.E.2d 591.

In their second-amended complaint, the plaintiffs sought relief against the defendants, who were their former attorneys, for legal malpractice. Count I alleged negligence, count II alleged breach of contract, and count III alleged breach of fiduciary duty. The following facts, taken exclusively from the plaintiffs' second-amended complaint, form the basis of their claims for relief.

In 1974, the plaintiff, Amalendu Majumdar, M.D. (Majumdar), became an employee of the Bel-Austin Medical Corporation (Bel-Austin). In February 1977, Majumdar acquired a 49% interest in the outstanding stock of Bel-Austin and was named an officer and director of the corporation. The defendants acted as Bel-Austin's corporate legal counsel in the transaction.

In June 1980, Majumdar, while still a shareholder, officer, and director of Bel-Austin, contacted the defendants and requested that

they represent him in forming a medical corporation independent of Bel-Austin. The defendants accepted the engagement and the plaintiff, Amalendu Majumdar, M.D., S.C. (AMSC), was incorporated on July 1, 1980. The corporate purpose contained in the articles of incorporation for AMSC drafted by the defendants permitted the corporation to engage in the unrestricted practice of medicine, which is the same purpose as contained in Bel-Austin's articles of incorporation. Majumdar was the sole shareholder of AMSC and became its only officer and director. Beginning upon its incorporation, AMSC acted as an independent contractor providing medical services to Bel-Austin.

The allocation of Bel-Austin's profits was restructured in 1986 because Majumdar was displeased with the income disparity between himself and Dr. Bruce Zummo, Bel-Austin's other shareholder. In March 1987, Majumdar informed Zummo that he would be seeing patients outside of his relationship with Bel-Austin. In November 1987, the defendants were present at a meeting where Zummo announced that Majumdar was seeing patients in direct competition with Bel-Austin.

On December 2, 1987, the defendants, acting as corporate legal counsel for Bel-Austin, sent a letter to Majumdar outlining a proposed acquisition of his interest in Bel-Austin by Zummo. Nothing further is alleged in the complaint relating to the buyout.

In 1988, the plaintiffs, represented by counsel other than the defendants, filed an action in the circuit court of Cook County against Zummo and Bel-Austin known as case No. 88 CH 1190. Bel-Austin filed a counterclaim in that action against Majumdar alleging that he breached his fiduciary duty as an officer and director of Bel-Austin by engaging in direct competition and diverting fees due from its patients to himself. That action was settled and dismissed on February 5, 1992, upon terms which required, *inter alia*, that Majumdar resign as an officer and director of Bel-Austin, assign all of his Bel-Austin stock to Zummo, and pay Bel-Austin $70,000.

In the instant action, the plaintiffs assert that the defendants improperly incorporated AMSC, failed to advise Majumdar of his fiduciary duties as an officer and director of Bel-Austin, failed to advise him to resign as an officer and director of Bel-Austin, and engaged in a conflict of interest in representing both the plaintiffs and Bel-Austin. The plaintiffs conclude that the defendants' acts and omissions constituted negligence (count I), breach of contract (count II), and breach of fiduciary duty (count III), all of which proximately resulted in the damages sustained by them as a consequence of the settlement in case No. 88 CH 1190.

■ As we stated in *Metrick*: "To plead a good and sufficient cause of action against an attorney for legal malpractice, a plaintiff must allege facts, which establish (1) an attorney/client relationship, (2) a duty owed by the defendant to the plaintiff arising out of that relationship, (3) a breach of that duty on the part of the defendant, (4) a proximate causal relationship between the defendant's breach of duty and the damages sustained by the plaintiff, and (5) damages." (*Metrick*, 266 Ill. App. 3d at 652; see also *Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 116, 502 N.E.2d 1186.) A complaint against an attorney for malpractice may be couched in either contract or tort (*Collins v. Reynard* (1992), 154 Ill. 2d 48, 607 N.E.2d 1185); however, even when grounded in tort, the action arises out of either an express or implied contract for legal services (*Land v. Greenwood* (1985), 133 Ill. App. 3d 537, 478 N.E.2d 1203). Consequently, because the duty owed by the attorney arises out of a contractual relationship, it is necessarily limited by the scope of the contract of engagement.

■ Actions for breach of contract must allege facts sufficient to indicate the terms of the contract because the duty imposed by those terms gives rise to the breach. (See *Nielsen v. United Services Automobile Association* (1993), 244 Ill. App. 3d 658, 612 N.E.2d 526.) The same is true of actions for negligence arising out of the breach of a duty voluntarily assumed under the terms of a contract because the scope of the duty is likewise limited to the contractual undertaking. See *Poelker v. Macon Community Unit School District No. 5* (1990), 212 Ill. App. 3d 312, 571 N.E.2d 479.

■ The plaintiffs alleged that the defendants owed Majumdar a duty to explain the obligations of a corporate officer and director in 1977 when he was named an officer and director of Bel-Austin. The complaint, however, is void of any allegations of an attorney/client relationship existing between the defendants and Majumdar in 1977, much less allegations as to the terms of such an engagement. The fact that Majumdar became a shareholder, officer, and director of the defendants' client, Bel-Austin, is of no moment because the attorney for a corporate client owes his duty to the corporate entity, not its individual shareholders, officers, or directors. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 413 N.E.2d 1299.) Absent an attorney/client relationship, the defendants owed no duty to Majumdar to advise him of anything. (See *Bloomer Amusement Co. v. Eskenazi* (1979), 75 Ill. App. 3d 117, 394 N.E.2d 16.) Further, it cannot be inferred from the facts alleged in the plaintiffs' complaint that Majumdar was a third-party beneficiary of Bel-Austin's engagement of the defendants in 1977 to draft the stock purchase agreement whereby he acquired an interest in the

corporation. See *York v. Stiefel* (1983), 99 Ill. 2d 312, 458 N.E.2d 488; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.

The plaintiffs' first allegation of an attorney/client relationship between the defendants and Majumdar related to the incorporation of AMSC in 1980. According to the plaintiffs, Majumdar informed the defendants "that he wanted to form an independent corporation so that he could manage his own profit sharing plan (instead of being in the same plan with Zummo), be 'his own boss' and to operate his own corporation independently from Bel-Austin." He told the defendants "that his priorities were different from Zummo's, as [he] was raising children and needed more cash, while the older Zummo was more interested in donating to the Bel-Austin Pension Plan." The plaintiffs concluded that the defendants were negligent and breached their contract of engagement by incorporating AMSC with an unrestricted right to practice medicine and by failing to advise Majumdar at the time of AMSC's incorporation that serving as an officer and director of both AMSC and Bel-Austin either constituted a conflict of interest or caused a likely conflict of interest. We fail to find, however, any allegation of fact in the plaintiffs' complaint to support these conclusions.

■ The plaintiffs have not cited to, nor has our research uncovered, any case which stands for the proposition that holding directorships in two corporations constitutes a *per se* conflict of interest. Also, while we agree with the plaintiffs that attorneys are obligated to inform their clients of the risks associated with a proposed legal course of action (*Metrick*, 266 Ill. App. 3d at 653), we are unwilling to hold that attorneys are required to exercise clairvoyance to discharge the obligation. Foreseeability of risk is the predicate of an attorney's duty to advise. In retrospect, almost anything is foreseeable (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307), but duties are not fixed based upon that which is merely conceivable. Foreseeability is defined in terms of that which is objectively reasonable to expect at the time of a defendant's action or inaction. See *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.

■ In this case, there are no facts pled in the plaintiffs' second-amended complaint which suggest that the defendants knew or should have known at the time AMSC was incorporated that it or Majumdar intended to engage in direct competition with Bel-Austin. The only reasonable inference we are able to draw from the facts alleged is that Majumdar engaged the defendants to incorporate AMSC to enable him to manage his own profit sharing plan and reduce his pension contributions in favor of a higher salary by having AMSC act as Bel-Austin's independent contractor as opposed to remaining

an employee of Bel-Austin. The plaintiffs do not even allege that Majumdar intended to compete with Bel-Austin when AMSC was incorporated. Consequently, we are at a loss to understand how the defendants could have reasonably foreseen a conflict of interest at the time AMSC was incorporated. Further, the fact that AMSC was incorporated with unrestricted powers to practice medicine adds nothing to the plaintiffs' contentions in this regard for two reasons. First, AMSC needed those powers to act as an independent contractor rendering medical services to Bel-Austin's patients and second, the conflict of interest created by Majumdar's direct competition with Bel-Austin would have existed even if AMSC had never been incorporated.

The plaintiffs' second-amended complaint does allege, however, that the defendants were informed of Majumdar's direct competition with Bel-Austin in November 1987. By reason of their dual representation of Bel-Austin and AMSC, it can reasonably be inferred that the defendants knew of Majumdar's status as an officer and director of both corporations at that time. The plaintiffs alleged that even when the defendants were advised of Majumdar's actual conflict of interest they still failed to advise him to resign as an officer and director of Bel-Austin. Further, the plaintiffs alleged that the defendants were acting as corporate legal counsel for both Bel-Austin and AMSC. If proven, these facts could support a finding that the defendants breached their attorney/client relationship with the plaintiffs by not advising Majumdar to either cease direct competition with Bel-Austin or to resign as an officer and director of Bel-Austin, and that their independent judgment on behalf of the plaintiffs was affected by their loyalty to Bel-Austin, placing them in the position of a conflict of interest. See *In re LaPinska* (1978), 72 Ill. 2d 461, 381 N.E.2d 700; 134 Ill. 2d R. 1.7.

Even when a plaintiff has sufficiently pled an attorney/client relationship and the breach of the duties arising therefrom, to state a good and sufficient cause of action for legal malpractice in either tort or contract, the plaintiff must plead facts establishing that the breach was the proximate cause of the alleged damages. (*Metrick*, 266 Ill. App. 3d at 654.) The plaintiffs here alleged that they incurred damages by reason of the settlement of Bel-Austin's counterclaim in case No. 88 CH 1190. Specifically, they contended that if the defendants had advised Majumdar to resign as an officer and director of Bel-Austin, he would have done so, thus eliminating any fiduciary duty owed to Bel-Austin. They concluded that but for the defendants' malpractice, Bel-Austin would have had no action for breach of fiduciary and the plaintiffs would not have been subject to suit or compelled to settle.

However, as we have already found based upon the facts alleged by the plaintiffs, the earliest point in time that the defendants could have breached their duties to the plaintiffs was in November 1987 when they were first informed of Majumdar's direct competition with Bel-Austin. Consequently, only that portion of the plaintiffs' damages occasioned by Majumdar's direct competition with Bel-Austin during and after November 1987 could possibly stand in a proximate causal relationship to the defendants alleged malpractice. From the plaintiffs' second-amended complaint, we are unable to determine what portion, if any, of the amounts paid in settlement of case No. 88 CH 1190 were attributable to Majumdar's competition with Bel-Austin during or after November 1987. What we do know from the copy of Bel-Austin's counterclaim, attached as an exhibit to the plaintiffs' second-amended complaint, is that Majumdar was accused of competing with Bel-Austin from January 1, 1985 through December 31, 1987. Since the period of direct competition is alleged to encompass some period of time after the defendants were made aware of Majumdar's activities, the plaintiffs have pled facts establishing a proximate causal relationship between the defendants' alleged malpractice and at least a portion of the damages they alleged.

Based upon the foregoing analysis, we find that the plaintiffs have alleged facts which if proven could entitle them to relief, and as a consequence, the trial court erred in dismissing their second-amended complaint. However, we do believe that the complaint should be stricken.

While the plaintiffs are entitled to plead a legal malpractice action in either tort or contract, recovery under both theories in the same complaint is sought in the alternative. (*Collins*, 154 Ill. 2d at 50.) Section 2—613 of the Code permits alternative pleading when a party is in doubt as to which of two or more statements of fact is true. (735 ILCS 5/2—613(b) (West 1992).) In this case, however, counts I and II of the plaintiffs' second-amended complaint are the same. Admittedly, count II has seven more paragraphs than count I, one of which is an allegation that the plaintiffs performed all aspects of their contract with the defendants, but the six remaining additional paragraphs contain nothing by way of factual allegation that had not already been stated in count I. Counts I and II of the plaintiffs' second-amended complaint are not plead in the alternative; they are duplicative. Further, although an action for legal malpractice is conceptually distinct from an action for breach of fiduciary duty because not all legal malpractice rises to the level of a breach of fiduciary (*Metrick*, 266 Ill. App. 3d at 656), when, as in this case, the

same operative facts support actions for legal malpractice and breach of fiduciary resulting in the same injury to the client, the actions are identical and the later should be dismissed as duplicative. (*Calhoun v. Rane* (1992), 234 Ill. App. 3d 90, 599 N.E.2d 1318.) As a result, we remand this case to the circuit court with directions to strike the plaintiffs' second-amended complaint, and grant the plaintiffs leave to replead either their negligence action or their breach of contract action against the defendants.

For the foregoing reasons, the order dismissing the plaintiffs' second-amended complaint without leave to amend is reversed, and this case is remanded to the circuit court with directions.

Reversed and remanded with directions.

CAHILL and THEIS, JJ., concur.