**MOGULS OF ASPEN, INC., a Colorado corporation, and The Mogul Shop, Inc., a Colorado corporation, Plaintiffs–Appellants,**

**and**

**Nancy Snell, Plaintiff,**

v.

**FAEGRE & BENSON, a partnership, and Christian C. Onsager, individually, and as a partner in Faegre & Benson, Defendants–Appellees.**

No. 95CA1363.

Colorado Court of Appeals, Div. II.

May 15, 1997.

Rehearing Denied July 31, 1997.

Dufford & Brown, P.C., Phillip D. Barber, Douglas A. Thomas, Denver, for Plaintiffs–Appellants.

Long & Jaudon, P.C., Michael T. McConnell, David H. Yun, Denver, for Defendants–Appellees.

Opinion by Judge CRISWELL.

Plaintiffs, Moguls of Aspen, Inc. (MOA) and Mogul Shop, Inc. (MSI), appeal from the judgment entered upon a jury verdict in favor of defendants, Faegre & Benson, a law firm, and Christian Onsager, one of its members. We affirm.

Plaintiffs are two corporations wholly owned by Nancy Snell. MOA leased commercial space and subleased it to MSI, which operated a retail ski apparel shop on the premises.

Plaintiffs first contacted the defendant law firm as a result of a dispute between them and the lessor of the commercial space concerning the amount of rent owed. After receiving notice from the lessor that they were in default on their lease, plaintiffs' real estate attorney contacted the law firm to discuss the possibility of filing a Chapter 11 bankruptcy petition.

A meeting was held with two attorneys of the law firm on June 25, 1991. Plaintiffs brought both the written lease and the lessor's notice of default to the meeting. At trial, their evidence sought to establish that an attorney-client relationship was established at this meeting. According to plaintiffs, while the plain language of the lease stated that the lessor could terminate the lease ten days after serving the notice of default, defendants did not advise them of this fact, nor did they disclose the legal effect of taking no immediate action to preserve the lease.

Plaintiffs asserted that, after this initial meeting, defendants performed no further work on plaintiffs' behalf until August 7, 1991. At trial, plaintiff's experts testified that these acts and omissions by defendants constituted professional negligence, as well as breaches of their fiduciary duties to act with "due diligence" and "in the client's best interest."

On August 7, 1991, after the lessor had served a demand for payment or possession on them, plaintiffs again contacted one of the attorneys who had been present at the June 25, 1991, meeting. This attorney told plaintiffs that he was too busy to handle the matter, and he referred it to defendant Onsager. Onsager informed plaintiffs that the lessor could not obtain possession of the premises unless an additional three-day notice was served upon them. This advice was admittedly inaccurate.

On August 22, 1991, the lessor terminated plaintiffs' lease. As a result, plaintiffs ceased doing business.

The original complaint in this case was filed a few days before the statute of limitations expired. At that time, because MSI, the owner of the business, was subject to a Chapter 7 bankruptcy proceeding and its trustee had elected not to pursue a legal malpractice claim against defendants, MSI

was not made a party to the action. Nancy Snell was an original plaintiff. However, before trial, the trial court dismissed all of Snell's individual claims, concluding that there was no evidence to support a reasonable inference that Snell, the individual, as distinguished from the two wholly-owned corporations, had an attorney-client relationship with defendants.

Nevertheless, the court allowed the complaint to be amended to add MSI as a plaintiff. It also concluded that, because the claims that Snell had attempted to state were substantially the same as the claims now asserted by MSI, the latter claims would relate back to the date that Snell filed the initial complaint. Hence, it held that MSI's claim was not time-barred.

During the course of the later trial, the court submitted the claim of professional malpractice to the jury. It refused, however, to instruct upon any separate claim based upon an alleged violation of fiduciary duty. The jury rejected the claim submitted to it, and the court entered judgment upon that verdict.

MOA and MSI appeal from that judgment, asserting that the court erred in refusing to instruct the jurors with respect to their claim that defendants had violated certain fiduciary duties that defendants owed to them. We disagree.

The court here instructed the jurors upon the alleged professional malpractice of defendants consistent with the standard instruction set forth in *CJI–Civ.3d* 15:23 (1989). In accordance with this instruction, the jurors were required to determine whether defendants acted in a reasonably prudent manner, as measured against the acts or omissions of a reasonably careful attorney under the same or similar circumstances.

Plaintiffs tendered an instruction, consistent with *CJI–Civ.3d* 26:1 (1989), which set forth the elements of a claim based upon the violation of a fiduciary duty. In addition, they tendered an instruction, patterned after *CJI–3d Civ.* 26:3 (1989), describing the fiduciary duties that plaintiffs asserted defendants had violated. This instruction would have told the jurors that defendants owed the following duties to plaintiffs (none of the terms of which were further defined or described):

[A] duty to [their] client to employ that degree of knowledge, skill and judgment ordinarily possessed by members of the legal profession in carrying out the services for [their] client.

[A] duty to [their] client to act with due diligence in the affairs of [their] client.

[A] duty to [their] client to provide accurate information to [their] client regarding the status of legal matters intrusted to [them].

[A] duty to [their] client of undivided loyalty and should exercise independent judgment on behalf of [their] client.

[A] duty to [their] client to the highest degree of fairness and good faith.

[A] duty to [their] client of full disclosure.

The trial court, however, determined that the evidence would support no claim beyond one based upon defendants' alleged negligence and lack of due diligence, the claim for which was adequately covered in the other elemental instruction. Hence, it refused to instruct the jurors as plaintiffs requested. We conclude that such refusal was proper.

Plaintiffs assert that each of the duties described in their tendered instructions was violated because: (1) plaintiffs were not advised at the initial meeting as to the procedure pursuant to which the lease could be terminated or the effect of such termination upon the effectiveness of any later bankruptcy proceedings; (2) defendants failed adequately to investigate plaintiffs' circumstances and failed to formulate a plan of action on their behalves from the initial meeting until plaintiffs contacted defendants again in August; and (3) on this latter date, the attorney who initially consulted with plaintiffs asserted that he was too busy with other matters to provide any further services and referred them to defendant Onsager.

All of these allegations, while serious, do not implicate defendants' actions except in a negligence or malpractice context. There is no allegation or evidence that defendants' acts or omissions, if any, resulted from an improper motive, a conflict of interest, or any

other consideration beyond carelessness and lack of attention.

Under such circumstances, other courts have concluded that a claim for breach of a fiduciary duty is duplicative of a claim for professional malpractice and that only the latter claim should be the subject of adjudication. As stated in *Calhoun v. Rane*, 234 Ill.App.3d 90, 95, 175 Ill.Dec. 304, 307, 599 N.E.2d 1318, 1321 (1992):

> A fiduciary relationship exists as a matter of law between an attorney and his client. Thus, in effect any alleged malpractice by an attorney also evidences a simultaneous breach of trust; however, that does not mean every cause of action for professional negligence also sets forth a separate and independent cause of action for breach of fiduciary duty. In the present case, we find that [the client] has not plead [sic] a cause of action for breach of fiduciary duty distinct from the alleged malpractice case still pending in the trial court. A duplicative count may be properly dismissed.

*Accord Majumdar v. Lurie*, 274 Ill.App.3d 267, 274, 210 Ill.Dec. 720, 726, 653 N.E.2d 915, 921 (1995) ("[W]hen, as in this case, the same operative facts support actions for legal malpractice and breach of fiduciary duty resulting in the same injury to the client, the actions are identical and the later [sic] should be dismissed as duplicative.")

No Colorado appellate court has yet addressed this issue with respect to the alleged breach of a fiduciary duty resulting from a lawyer's malpractice. There have been several instances in which a trial court has allowed both types of claims to be passed upon by a jury. *See Martinez v. Badis*, 842 P.2d 245 (Colo.1992); *Bailey v. Allstate Insurance Co.*, 844 P.2d 1336 (Colo.App.1992). But, the question whether, under the particular factual circumstances, the claims were duplicative was not addressed. In *Bailey v. Allstate Insurance Co.*, *supra*, the issue presented was whether the damages awarded under each of the two claims were duplicative, not whether the claims themselves were separate.

Nevertheless, previous Colorado decisions with respect to claims asserted against members of the medical profession are consistent with the analysis adopted by other courts as to claims asserted against lawyers. *See Spoor v. Serota*, 852 P.2d 1292 (Colo.App. 1992) (although a fiduciary has a duty to use reasonable care and skill, that same duty is imposed upon physicians under negligence theories; hence, fiduciary duty claim is duplicative of malpractice claim); *Awai v. Kotin*, 872 P.2d 1332 (Colo.App.1993).

Further, each of the duties referred to in plaintiffs' tendered instructions, insofar as the evidence would implicate any of them, is stated in absolute terms, *i.e.*, duty "to provide accurate information." Yet, where, as here, it is the attorney's lack of due diligence and negligence that is the basis for the claim, the duty is not an absolute one. Rather, as the court properly instructed the jurors, the duty is to act with that care and diligence with which a reasonably careful attorney would act under the same or similar circumstances.

We agree with plaintiffs that some duties owed by attorneys may be absolute. The duty of "undivided loyalty" may be one. However, contrary to plaintiffs' assertions, here, the evidence does not implicate such a duty; the violations of duty alleged here were grounded upon the lawyers' alleged negligence and lack of due diligence.

We recognize that circumstances may exist in which a lawyer may be guilty both of malpractice and of other violations of his or her fiduciary obligations. If a claimed fiduciary violation is separate and independent from any alleged negligence, separate claims may well be properly asserted. *See Martinez v. Badis*, *supra* (Erickson, J., specially concurring). This, however, is not such a case. And, the trial court properly recognized that it was not.

The judgment is affirmed.

MARQUEZ and TAUBMAN, JJ., concur.