# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pippen v. Pedersen & Houpt*, 2013 IL App (1st) 111371

---

| | |
|---|---|
| Appellate Court Caption | SCOTTIE PIPPEN and AIR PIP, INC., Plaintiffs-Appellants, v. PEDERSEN AND HOUPT; JAMES J. CLARKE II; and PEER PEDERSEN, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-11-1371 |
| Filed | February 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action against defendant law firm for the losses plaintiffs suffered in connection with the representation provided in a complex transaction involving the purchase of an aircraft, the trial court's judgment awarding damages on the negligence claim was affirmed after deductions for contributory negligence and setoffs for recoveries from third parties, and the entry of summary judgment against plaintiffs on the breach of fiduciary duty claim was upheld on the ground that it was duplicative of the negligence claim, since the facts related to the negligent representation were the operative facts supporting both claims. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-L-3444; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Eugene J. Schiltz and Sean B. Crotty, both of Coleman Law Firm, and George W. Spellmire, of Spellmire Law Firm, LLC, both of Chicago, for appellants.

Hinshaw & Culbertson LLP, of Chicago (Stephen R. Swofford, Peter D. Sullivan, and Aimee E. Delaney, of counsel), for appellees.

Panel

JUSTICE SIMON delivered the judgment of the court, with opinion.

Justices Quinn and Connors, concurred in the judgment and opinion.

## OPINION

¶ 1     Plaintiffs, Scottie Pippen and Air Pip, Inc. (Air Pip), appeal from multiple orders of the circuit court of Cook County in connection with a jury trial on their claim of negligence against defendants, Pedersen & Houpt, James J. Clarke, and Peer Pedersen, that resulted in an entry of judgment in their favor in the sum of $790,901.89. On appeal, plaintiffs contend that the circuit court erred by granting summary judgment on their breach of fiduciary duty claim in favor of defendants because that claim was not duplicative of their negligence claim and they should have been permitted to pursue both claims even if they were duplicative. For the reasons that follow, we affirm.

¶ 2                              BACKGROUND

¶ 3     Plaintiffs filed a four-count amended complaint against defendants to recover damages allegedly caused by defendants' inadequate representation in connection with the purchase of a Gulfstream II aircraft. Prior to trial, plaintiffs withdrew one of their claims and the circuit court granted summary judgment in favor of defendants on another, and it is the remaining claims for negligence and breach of fiduciary duty that are at issue in this appeal.

¶ 4     In their complaint, plaintiffs set forth numerous factual allegations that were incorporated into both claims. Plaintiffs asserted that Lunn Partners, LLC (Lunn Partners), an investment advisory firm, acted as Pippen's financial advisor and agent with regard to various financial matters. Robert Lunn, who owned and/or controlled Lunn Partners, was Pippen's investment advisor. The law firm of Pedersen & Houpt represented Lunn Partners and many of its entities. Peer Pedersen, an attorney at and founding member of Pedersen & Houpt, was a member and part owner of Lunn Partners. Around December 2001, Lunn began negotiations on Pippen's behalf to purchase an interest in a Gulfstream II aircraft from VG in Flight, Inc. (VG in Flight). In January 2002, James J. Clarke, an attorney at and partner of Pedersen & Houpt, was retained to represent Pippen's interests in the purchase of the aircraft.

¶ 5     Plaintiffs also asserted that Lunn and defendants structured a deal whereby Air Pip, which was to be formed on Pippen's behalf, and CF Air, LLC (CF Air), which was to be formed by Craig Frost, would purchase the aircraft for $7 million from VG in Flight. Frost

was a shareholder of VG in Flight and a licensed pilot, and he had flown private charters for Pippen in the past. The deal, as structured by Lunn and defendants, was comprised of multiple agreements. Air Pip, CF Air, and VG in Flight were to enter into an aircraft purchase agreement. Pippen, Air Pip, and CF Air were to enter into a co-ownership agreement, under which Air Pip would own a 51% interest in the aircraft and CF Air would own a 49% interest. CF Air and Air Pip were to enter into an aircraft lease agreement with Air Charter Professionals Inc. (Air Charter), a company owned and/or controlled by Frost, whereby Air Pip and CF Air would lease the aircraft to Air Charter, which would pay all operating and maintenance expenses for the aircraft and a monthly rental payment. In addition, Pippen and Air Charter were to enter into an open charter agreement whereby Pippen could charter the aircraft at a certain specified price. Each of the aforementioned agreements was drafted by Clarke and Pedersen & Houpt. The purchase of the aircraft was to be financed by payments by Pippen and Frost and through a loan obtained by Pippen, Air Pip, Frost, and CF Air. Plaintiffs asserted that, taken as a whole, the transactions provided that Air Pip would own a 51% interest in the aircraft and that the aircraft would then be leased out to Air Charter which would generate sufficient funds to pay the debt service on the loan and Air Charter would pay the aircraft's operating and maintenance expenses.

¶ 6    Plaintiffs also asserted that defendants failed to ensure that Pippen did not execute and deliver documents relating to the aircraft purchase until the agreements comprising the purchase had been signed and executed by all relevant parties. On April 11, 2002, Pippen, individually and/or as Air Pip, executed all of the agreements that comprised the aircraft purchase and Frost and CF Air signed the purchase agreement and the co-ownership agreement shortly thereafter. Unbeknownst to plaintiffs, Frost and CF Air had unilaterally modified the co-ownership agreement after it had been signed by plaintiffs to provide that Frost would own a 50% interest in the aircraft, rather than the 49% interest upon which the parties had agreed. Frost and Air Charter never signed the lease agreement or open charter agreement. On April 18, 2002, Clarke sent an e-mail to Lunn Partners requesting that it obtain the relevant signed documents, and continued to send e-mails to Lunn and Lunn Partners until as late as May 30, 2002, at which time Clarke indicated that he had not yet received the signed documents. On July 8, 2002, Clarke wrote to Lunn and related that the agreements had not yet been signed. On April 18, 2003, John Muehlstein, an attorney at Pedersen & Houpt, sent a letter to an attorney from another firm who also represented Pippen and related that Pedersen & Houpt did not have any documents executed by Frost in its files.

¶ 7    Plaintiffs also asserted that defendants failed to discover through the exercise of proper due diligence that Frost had misrepresented his finances. Other than Clarke sending an e-mail to Asha Sindha, an employee of Lunn Partners, on January 30, 2002, regarding the financial soundness of VG in Flight and an e-mail to Lunn and Sindha on February 6, 2002, regarding that same topic, defendants did not conduct any further due diligence in connection with the aircraft purchase. Instead, defendants relied on Lunn to do so, even though they knew or should have known that Lunn had a financial interest in the completion of the deal where he was to receive a $150,000 management fee upon its completion.

¶ 8    Plaintiffs also asserted that defendants permitted Lunn to control the disbursement of substantial sums of Pippen's money and failed to ensure that he did not disburse those funds

until all of the agreements comprising the aircraft purchase had been executed. Plaintiffs asserted that on January 28, 2002, Pedersen & Houpt established an escrow account into which $100,000 of Pippen's money was transferred as a refundable deposit toward the purchase of the aircraft. On March 20, 2002, Lunn wired $250,000 of Pippen's money to Air Charter. On March 21, 2002, Lunn authorized the release to VG in Flight of the $100,000 that had been placed in escrow and also transferred in excess of $1 million of Pippen's money to bank accounts controlled by Frost. Only a fraction of the $1 million was applied to the purchase price of the aircraft as portions of those funds went to Frost and Lunn, and another portion was applied to VG in Flight's debt service, even though Pippen had no obligations as to that debt. In addition, some of Pippen's money was disbursed to Pedersen & Houpt to pay for the attorney fees accrued in connection with the aircraft purchase.

¶ 9    Plaintiffs also asserted that on or about April 5, 2002, Pippen signed a promissory note, an aircraft security agreement and assignment, and an unconditional guaranty in connection with a loan he received from JODA, LLC (JODA), for $5,007,000 to finance the aircraft purchase. Plaintiffs asserted that Pippen was fraudulently induced into executing the promissory note where he did so in reliance upon and anticipation of the execution and delivery by all parties of the agreements relating to the aircraft purchase. The promissory note had since been extended and/or refinanced at times, and Pippen was alleged to have owed the principal on the note, plus interest, late fees, penalties, and attorney fees. In addition, Air Charter, CF Air, and Frost had failed to make loan payments as due, which led to a default and exposed Pippen to the risk that he might be fully liable under the note as guarantor. JODA and/or its assignees, Frost, and CF Air subsequently instituted various lawsuits and arbitration proceedings against Pippen, including an ongoing lawsuit against him as the alleged guarantor of the $5,007,000 loan.

¶ 10    Plaintiffs also asserted that defendants were aware of numerous problems regarding the aircraft purchase, but failed to communicate their concerns to Pippen. On March 20, 2002, Clarke sent an e-mail to Lunn Partners in which he raised questions as to the formation of CF Air and the sufficiency of the financial information he had received about VG in Flight and related that VG in Flight was refusing to warrant its financial information and that a conflict of interest existed where Frost owned other flight companies that would be in competition with Air Pip. On March 26, 2002, Clarke sent an e-mail to Lunn relating that he did not believe Pippen had signed any agreements with VG in Flight, Frost, or CF Air; the Secretary of State of Delaware had reported there was no record of CF Air's formation; the only documents Pippen had signed with regard to the loan from JODA did not reflect the improved terms Clarke had negotiated on behalf of Pippen; Pippen had not signed the organizational documents for Air Pip; and several key business points remained open. On March 27, 2002, an executive at JODA wrote to Clarke and stated that the loan at issue was one of the strangest he had ever seen, that "$1,100,000.00 has been remitted as partial payment for purchase of an aircraft for which no written executed agreement exists and no transaction has occurred," and that "the loan providing funds for the balance of the purchase price [has] not been finalized or executed." On April 2, 2002, Clarke sent a letter to Lunn in which he indicated that there was potential concern from the viewpoints of Pippen and Lunn Partners concerning the aircraft purchase. Defendants, however, did not relate any of these

concerns to Pippen.

¶ 11     Plaintiffs further asserted that they had been injured by defendants' conduct where they had paid out in excess of $1.7 million in connection with the aircraft; were alleged to have been liable for an additional $5,007,000, plus interest, penalties and attorney fees; and had paid legal fees to defend themselves in the legal proceedings brought against them in connection with the aircraft purchase. In addition, due to defendants' failure to obtain a signed lease agreement from Frost and Air Charter, Air Pip did not receive any leasing revenues under that agreement, and Air Charter, Frost, and CF Air did not make rent payments or other required maintenance payments on the aircraft. Also, due to defendant's failure to obtain a signed co-ownership agreement from Frost prior to Pippen's execution of the promissory note, Frost was able to pledge the aircraft's engines as collateral for preexisting debt, and the engines were subsequently repossessed pursuant to various security agreements thereby rendering the aircraft unusable.

¶ 12     In their negligence claim, plaintiffs asserted that an attorney-client relationship existed between them and defendants and that defendants owed them a duty to exercise that degree of skill and care usually and customarily exercised by attorneys representing clients in the same or similar circumstances. Plaintiffs alleged that defendants had breached that duty by failing to adequately investigate VG in Flight and Frost and relying on Lunn to do so, failing to inform Pippen of Lunn's management fee, allowing Lunn to control the disbursement of Pippen's money, failing to ensure that Pippen's money was not distributed until after the agreements comprising the aircraft purchase had been executed, failing to ensure that plaintiffs did not execute and deliver any documents or agreements until the agreements comprising the purchase had been executed by all parties, failing to alert Pippen of the concerns that arose regarding the purchase, and failing to advise Pippen that the co-ownership agreement had been altered to provide Frost and CF Air a 50% interest in the aircraft. Plaintiffs asserted that, but for defendants' negligence, they would not have proceeded with the aircraft purchase or, alternatively, the purchase would have been made subject to the existence of valid and binding agreements between the parties. Plaintiffs also asserted that, as a direct and proximate result of defendants' negligence, they had suffered and would continue to suffer damages in connection with the aircraft purchase and subsequent lawsuits. Plaintiffs requested a judgment in their favor and against defendants of an amount in excess of $6.7 million, which represented the $1.7 million Pippen initially invested in the aircraft; the $5,007,000, plus interest, penalties, attorney fees, and liability in connection with the promissory note; and the legal fees plaintiffs had incurred in defending themselves from the various lawsuits filed against them.

¶ 13     In their breach of fiduciary duty claim, plaintiffs asserted that defendants owed them a fiduciary duty and that defendants breached that duty by representing the interests of Lunn, Lunn Partners, and other Lunn entities while simultaneously purporting to represent plaintiffs in the aircraft purchase; failing to disclose those conflicts of interests to Pippen; and collecting fees while knowing of those conflicts of interest in violation of Rule 1.5 of the Illinois Rules of Professional Conduct (Ill. R. Prof. Conduct R. 1.5 (eff. Jan. 1, 2010)). Plaintiffs asserted that, but for defendants' breach of fiduciary duty, they would have obtained competent and loyal counsel to represent them and protect their interests in the

aircraft purchase and thereby not have suffered in excess of $6.7 million in losses as a result. Plaintiffs requested a judgment in their favor and against defendants of an amount in excess of $6.7 million, which represented the $1.7 million Pippen initially invested in the aircraft; the $5,007,000, plus interest, penalties, attorney fees, and liability in connection with the promissory note; the legal fees incurred by plaintiffs in defending themselves from the various lawsuits filed against them; and the disgorgement of all legal fees paid to defendants.

¶ 14    Defendants filed a motion for partial summary judgment asserting, *inter alia*, that summary judgment should be entered in their favor on plaintiffs' breach of fiduciary duty claim because it was duplicative of plaintiffs' negligence claim. Plaintiffs responded that the claims were not duplicative because the allegations as to breach of fiduciary duty demonstrated undisclosed conflicts of interest, self-dealing, and constructively fraudulent business transactions by defendants. Defendants replied that the negligence and breach of fiduciary duty claims arose out of the same alleged facts, that plaintiffs' conflict of interest theory served as a basis for both claims, and that plaintiffs alleged the same damages in both claims. The circuit court denied that portion of defendants' motion seeking summary judgment on the breach of fiduciary duty claim, finding that the allegations in the negligence and breach of fiduciary duty claims were not identical. The court stated that only evidence relating to the negligence claim could go before a jury, but the parties could proceed to trial on both counts contemporaneously, and any evidence or arguments relating to the breach of fiduciary duty claim could be presented to the court outside the presence of the jury.

¶ 15    During trial, the court reconsidered its ruling on the motion for summary judgment and granted judgment in favor of defendants as to the breach of fiduciary duty claim. The court found that the operative facts underlying both claims were the same where plaintiffs had alleged that defendants placed the interests of the law firm and other clients ahead of plaintiffs' interests, that defendants failed to adequately represent plaintiffs in connection with the aircraft purchase, and that defendants' inadequate representation caused plaintiffs to enter into that deal which, had they known of the preceding allegations, they otherwise would not have done. The court stated that the negligence and breach of fiduciary duty claims "are just too closely linked. One's almost the motivation for the other, and there's no separate damages. So I think it is duplicative."

¶ 16    The trial on plaintiffs' negligence claim then resumed and, upon the completion of that trial, the jury returned a verdict in favor of plaintiffs. The jury determined that plaintiffs had suffered $8,243,607.56 in damages, that 75% of the negligence that contributed to their injuries was attributable to them, and that their recoverable damages, therefore, totaled $2,060,901.89. The court then determined that defendants were entitled to $1,270,000 in setoffs arising from settlements and recoveries plaintiffs had obtained from other persons and entities and entered a judgment award of $790,901.89 in favor of plaintiffs and against defendants.

¶ 17                                        ANALYSIS

¶ 18    Plaintiffs contend that the circuit court erred by finding their negligence and breach of fiduciary duty claims to be duplicative and granting summary judgment in favor of

defendants on the breach of fiduciary duty claim on that basis. Plaintiffs do not challenge the jury's verdict or its finding of contributory negligence. As such, we will limit our consideration to the legal issue raised by plaintiffs on appeal and will not review the propriety of the jury's verdict.

¶ 19    A party is entitled to summary judgment where the pleadings, depositions, admissions, affidavits, and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 106 (2007). This court reviews the circuit court's ruling on a motion for summary judgment *de novo*. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004).

¶ 20    Plaintiffs assert that the negligence and breach of fiduciary duty claims are not duplicative because they have different elements and available defenses. Defendants respond that plaintiffs' negligence and breach of fiduciary duty claims are duplicative because both claims are supported by the same operative facts.

¶ 21    To prevail on a negligence claim for legal malpractice, the plaintiff must prove that the defendant owed the plaintiff a duty of due care arising from their attorney-client relationship, that the defendant breached that duty, and that the plaintiff suffered injury as a proximate result of the defendant's breach. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 225-26 (2006). The duty of care required of an attorney toward his or her clients is to exercise a reasonable degree of care and skill in representing them. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 196 (2007).

¶ 22    A fiduciary relationship exists between a client and his or her attorney as a matter of law (*Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 351 (2000)) and is founded on the substantive principles of agency, contract, and equity (*Armstrong v. Guigler*, 174 Ill. 2d 281, 294 (1996)). As such, a breach of a fiduciary duty is not a tort. *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 445 (1989). "The fiduciary duty owed by an attorney to a client encompasses the obligations of fidelity, honesty, and good faith." *Metrick v. Chatz*, 266 Ill. App. 3d 649, 656 (1994). To prevail on a breach of fiduciary duty claim, the plaintiff must prove that a fiduciary duty existed, that the defendant breached its fiduciary duty, and that the breach proximately caused the plaintiff's injury. *Neade v. Portes*, 193 Ill. 2d 433, 444 (2000).

¶ 23    While tort law has traditionally provided the primary means for resolving claims alleging legal malpractice (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162 (1994)), a complaint against an attorney for professional malpractice may be couched in either contract or tort (*Collins v. Reynard*, 154 Ill. 2d 48, 50 (1992)). However, this court has consistently held that while claims for legal malpractice and breach of fiduciary duty may be conceptually distinct, when such claims are supported by the same operative facts and result in the same injury to the plaintiff, the breach of fiduciary duty claim is duplicative of the malpractice claim and should be dismissed. *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 760 (2008); *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 273-74 (1995); *Metrick*, 266 Ill. App. 3d at 656. Our supreme court has also employed that same approach

in determining that it need not recognize a cause of action for breach of fiduciary duty by a physician because such a claim would have been duplicative of a medical negligence claim under the facts of that case where the claims were supported by the same operative facts and resulted in the same injury. *Neade*, 193 Ill. 2d at 445.

¶ 24   In this case, plaintiffs asserted that they had been injured by defendants' conduct in that they had spent substantial sums of money on the aircraft and the legal proceedings following its purchase, they faced over $5 million in liability in the ongoing litigation, they did not receive any revenues or payments under the lease agreement, and the aircraft's engines were repossessed thereby leaving it inoperative. Plaintiffs then incorporated those allegations of injury into both their negligence and breach of fiduciary duty claims.

¶ 25   The operative facts of a claim are those facts that actually caused the plaintiffs' injuries. *Neade*, 193 Ill. 2d at 443; *Nettleton*, 387 Ill. App. 3d at 761. In their negligence claim, plaintiffs asserted that defendants' negligent acts were a direct and proximate cause of their injuries and that, but for defendants' negligence, plaintiffs either would have refused to proceed with the purchase of the aircraft or would have purchased the aircraft subject to valid and binding agreements between the parties. In their breach of fiduciary duty claim, plaintiffs alleged that, but for defendants' breach, they would have obtained competent and loyal counsel to represent them in the purchase and protect their interests. Thus, the facts relating to defendants' negligent representation are the operative facts supporting both claims because plaintiffs' injuries were caused by those negligent acts, and defendants' breach of fiduciary duty only contributed to plaintiffs' injuries insofar as it prevented plaintiffs from retaining other counsel to represent them in a competent and loyal manner.

¶ 26   Although plaintiffs assert that defendants' conflicts of interest are operative facts because they are sufficient to support a claim for breach of fiduciary duty, those facts are not sufficient to establish such a claim because they do not show that the conflicts of interest caused plaintiffs' injuries. The conflicts of interest therefore only satisfy the breach element, and not the causation element, of a breach of fiduciary duty claim. For example, had defendants breached their fiduciary duties by simultaneously representing plaintiffs, Lunn, Lunn Partners, and other Lunn entities and, failing to disclose those conflicts of interests as plaintiffs have alleged, then represented plaintiffs in such a manner that plaintiffs nonetheless profited from the aircraft purchase as planned, plaintiffs would not be able to sustain a breach of fiduciary duty claim because they would not have been able to show that they were injured by defendants' breach. While defendants' alleged conflicts of interest may be related to plaintiffs' injuries insofar as the conflicts may have motivated defendants to provide plaintiffs with inadequate representation, they are not operative facts because they did not actually cause plaintiffs' injuries.

¶ 27   Here, plaintiffs' negligence and breach of fiduciary duty claims share the same operative facts and injuries where plaintiffs incorporated the same allegations of injury into both claims and those injuries were actually caused by defendants' allegedly negligent acts. Thus, the breach of fiduciary duty claim was duplicative of the negligence claim, and we conclude that the circuit court did not err by granting summary judgment in favor of defendants on that count.

¶ 28        In doing so, we note that we agree with plaintiffs that negligence and breach of fiduciary duty claims are conceptually distinct in that the relevant standard of care in a negligence claim encompasses a broader range of conduct than is covered by a fiduciary duty and that a negligence claim for legal malpractice is based in tort, while a claim for breach of fiduciary duty is founded on principles of agency, contract, and equity. However, under the approach set forth by this court (see *Nettleton*, 387 Ill. App. 3d at 760; *Majumdar*, 274 Ill. App. 3d at 273-74; *Metrick*, 266 Ill. App. 3d at 656) and confirmed by our supreme court (see *Neade*, 193 Ill. 2d at 440-45), we look to the operative facts and injury to determine whether the causes of action are duplicative, and in this case the operative facts and injury are the same. As our supreme court noted, the breach of fiduciary duty claim equates to a negligence claim in a case like this because to establish that they were injured by defendants' breach of fiduciary duty, plaintiffs must prove that they otherwise would have retained counsel that would not have injured them and, in doing so, must necessarily prove that defendants engaged in negligent acts and that those acts caused the injuries at issue. *Id.* at 443-45 (citing *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000)). The circuit court correctly noted that while the breach of fiduciary duty may have motivated defendants' negligent representation, it is defendants' negligence that caused plaintiffs' injuries.

¶ 29        Plaintiffs further contend that even if the negligence and breach of fiduciary duty claims are duplicative, they should have nonetheless been permitted to proceed on both counts because the claims were pleaded in the alternative. In doing so, plaintiffs cite to *Collins v. Reynard*, 154 Ill. 2d at 50, in which our supreme court held "that a complaint against a lawyer for professional malpractice may be couched in either contract or tort and that recovery may be sought in the alternative." However, our supreme court has subsequently addressed its holding in *Collins* and held that "[w]hile pleading in the alternative is generally permitted [citation], duplicate claims are not permitted in the same complaint." *Neade*, 193 Ill. 2d at 445. Having already determined that plaintiffs' negligence and breach of fiduciary duty claims are duplicative, we conclude that plaintiffs were not permitted to pursue both claims and that the circuit court did not err by granting summary judgment in favor of defendants on the breach of fiduciary duty count.

¶ 30                                    CONCLUSION

¶ 31        Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 32        Affirmed.